UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
WELLS FARGO BANK, N.A.,

                Plaintiff,                    <u>MEMORANDUM & ORDER</u>

      -against-                      10-CV-1762 (RER)

NATIONAL GASOLINE, INC., CHAIM
LAX, DAVID RISHTY, 86 GAS CORP.,
BAISLEY GAS CORP., MELROSE GAS
CORP., 111th STREET GAS CORP.,
NEPTUNE OIL CORP., 100
ROCKAWAY GAS CORP., COOPER
GAS CORP., 2061 GAS CORP., 8521
GAS CORP., FOREST GAS CORP.,
MAIRA RISHTY, SHLOMO ARJE a/k/a
MICHAEL ARJE, NATIONAL
GASOLINE WHOLESALE, LLC, 971
GAS CORP., SUN FUEL CORP., 2509
GAS CORP., IRVINGTON OIL CORP.,
FLATBUSH OIL CORP., LEAHS
EQUITIES, INC., WRIGHTSTOWN GAS
CORP., CATON GAS CORP., SUPERIOR
GAS CORP., 31ST GAS CORP., DOE,
INC. 1 through 10, and JOHN and/or JANE
DOES 1 through 10,

                Defendants.
------------------------------------------------------X

**RAMON E. REYES, JR., U.S.M.J.:**

      Before the Court are plaintiff's motion for entry of final judgment as to damages against

defendants 86 Gas Corp., Baisley Gas Corp., Melrose Gas Corp., 111th Street Gas Corp.,

Neptune Oil Corp., 100 Rockaway Gas Corp., Cooper Gas Corp., 2061 Gas Corp., 8521 Gas

Corp., and Forest Gas Corp. (Dkt. No. 66) (collectively, the "Consenting Defendants"), and

motion to enter default judgment against defendants 971 Gas Corp., Sun Fuel Corp., 2509 Gas

Corp., Flatbush Oil Corp., Wrightstown Gas Corp., Caton Gas Corp., Superior Gas, Inc., and 31st Gas Corp. (Dkt. No. 67) (collectively, the "Defaulting Defendants").  For the reasons that follow, plaintiff's motions are granted.

## BACKGROUND

Wells Fargo Bank, N.A. ("Plaintiff") commenced this action on April 21, 2010, against the Consenting Defendants and others.  (Dkt. No. 1 ("Compl.").)  Upon leave of the Court, on December 13, 2010, Plaintiff filed a First Amended Complaint naming the Defaulting Defendants and others.  (Dkt. No. 35 ("Amended Compl.").)  On February 23, 2011, the Clerk of the Court noted the Defaulting Defendants' default under Fed. R. Civ. P. 55.  (Dkt. No. 54.)  On October 21, 2011, the Consenting Defendants consented to entry of final judgment, jointly and severally, in favor of Plaintiff in an amount to be determined at a hearing.  (Dkt. No.  61.)  The Court held an evidentiary hearing on damages on January 26, 2012.[1]

Defendant National Gasoline, Inc. ("National" or "National Gasoline") is a wholesale gas distributor owned and/or operated by individual defendants Shlomo Arje ("Arje"), Chaim Lax ("Lax") and Michael Rishty ("Rishty").  (Amended Compl. ¶ 3.)  The Consenting and Defaulting Defendants are retail gas stations located in New York and New Jersey that are also owned and/or operated by Arje, Lax and Rishty, as well as Maira Rishty.  (Id. ¶¶ 7- 49.)  National supplied gasoline to the Consenting and Defaulting Defendants, who in turn sold the gasoline to consumers.  (Id. ¶¶ 2, 65.)

---

[1]  Before the hearing, counsel for all parties consented on behalf of their clients to my jurisdiction over the case for all purposes pursuant to 28 U.S.C. §636(c) and Fed. R. Civ. P. 73. (Dkt. No. 73.)  At the hearing, ten exhibits were received into evidence, and the Court heard testimony from Mark Long, vice president of Wells Fargo.  (Dkt. Nos. 74-83, 85.)

Plaintiff and National Gasoline entered into a credit and security agreement, revolving note, and other related agreements and documents that established a $6.5 million revolving line of credit (the "Loan").  (*Id.* ¶¶ 54-55, 58-59; Dkt. No. 67-1 ("Long Aff.") ¶ 2.)  To secure the Loan, National Gasoline assigned Plaintiff a lien and continuing security interest in certain "Collateral," which included all of National's current and after-acquired inventory, its accounts receivable, and in particular a "Collection Account."  (*Id.* ¶¶ 56-57, 60-63; Dkt. No. 74 ("Credit and Security Agreement") § 1.6(a); Dkt. No. 75 ("UCC Filing Confirmation"); Dkt. No. 76 ("Collection Account Statement"); Dkt. No. 77 (authentication of Collection Account Statement); Long Aff. ¶ 16.)  The Loan required that all of National's accounts receivable be deposited into the Collection Account, to be withdrawn only by Plaintiff.  (Credit and Security Agreement § 1.6(a).)[2]

National Gasoline was permitted to draw on the Loan up to 80% of the amount of its "Eligible Accounts," which included its accounts receivable, and National was to provide Plaintiff with monthly accounts receivable reports to determine this borrowing base.  (*Id.* §§ 1.2(a)(I), 5.1(c).)  The terms of the Loan prohibited National from including the following as Eligible Accounts: any accounts receivable aged over ninety days, or any amounts due from affiliated entities, such as the Consenting and Defaulting Defendants, as they are owned and/or operated by the same individuals that own and/or operate National.  (Amended Compl. ¶¶ 74-76; Credit and Security Agreement at A-3, A-4 (definition of Eligible Accounts).)

---

[2]  Under the Credit and Security Agreement, National was to deposit any funds received from its customers into the Collection Account, or to direct those customers to make payment into a "Lockbox" for future deposit into the Collection Account.  (Amended Compl. at ¶ 73; Credit and Security Agreement § 1.6(b).)

According to Plaintiff, the defendants conspired together to fraudulently induce it to enter into and maintain the Loan by, among other things, failing to disclose that the Consenting and Defaulting Defendants were affiliates of National, and by repeatedly including ineligible amounts these entities owed National in monthly accounts receivable reports.  (Amended Compl. ¶ 65; Long Aff. ¶ 15; Hr'g Tr. at 37:19-39:8.)  The defendants entered into this scheme to use the fraudulently obtained line of credit in order to purchase gasoline that was then sold to the Consenting and Defaulting Defendants.  (Amended Compl. ¶ 65; Long Aff. ¶ 17.)  However, the defendants never intended for the Consenting and Defaulting Defendants to repay National for the gasoline; rather, the proceeds of the retail gasoline sales would be transferred among the affiliates to compensate Lax, Rishty, Arje and Maira Rishty.  (Amended Compl. ¶ 66.)

Plaintiff avers that Rishty and National refused to remit to Plaintiff $1,479,000 in paid accounts receivable in December 2009, thereby converting those funds that constituted its Collateral.  (*Id.* ¶ 67.)  Plaintiff further contends that National, Lax and Rishty withdrew proceeds from the Collection Account without Plaintiff's consent, and used those funds to pay National Gasoline's creditors and other third parties before paying Plaintiff.  (*Id.* ¶¶ 67-68.).  National Gasoline and its principals are also alleged to have signed and deposited false checks of over $3 million into the Collection Account, thereby fraudulently increasing its value to draw more from the Loan.  (*Id.* ¶ 69.)  Finally, beginning in April 2010, and continuing until the date of the complaint, National Gasoline deposited collections of Collateral into other bank accounts owned or controlled by Lax, Rishty, and/or Arje.  (*Id.* ¶ 71.)

On April 13, 2010, Plaintiff deemed the affiliates' accounts ineligible and formally notified National Gasoline of its default under the Credit and Security Agreement.  (*Id.* ¶ 79.)

4

Plaintiff then accelerated the amount due under the Credit and Security Agreement on April 19, 2010.  (*Id*. ¶ 80.)  Two days later Plaintiff filed the instant action, alleging that the Defaulting and Consenting Defendants engaged in a civil conspiracy to defraud (Count 7) and violated the Racketeering Influenced and Corrupt Organizations Act ("RICO") (Count 10), and that separately, defendant 31ˢᵗ Gas Corp. converted funds from the Collection Account (Count 11). (*Id*. ¶¶ 118-30, 148-58, 159-62.)

## DISCUSSION

### I.   Defaulting Defendants' Liability

"Rule 55(a) provides that '[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.'"  *Diversified Fin. Sys., Inc. v. Tomich Corp.*, No. 95-cv-4211, 1997 WL 177873, at *2 (E.D.N.Y. Mar. 28, 1997).   Once a default judgment is entered, "a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability."  *Masino v. Alza Const. Corp*. No. 09-cv-4720 (NG) (RML), 2012 WL 911548, at *1 (E.D.N.Y. Feb. 24, 2012) (citing *Cotton v. Slone*, 4 F.3d 176, 181 (2d Cir. 1993)); *see also Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993).

Nevertheless, a court must still determine whether the alleged facts in the pleadings establish the defaulting defendant's liability as a matter of law.  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (citation omitted).  Additionally, a court must "ensure that there is a basis for the damages specified in a default judgment, [and] it may . . . make the determination through a hearing."  *E-Centurion, Inc. v. Long Beach Co.*, No. 06-cv-5913 (DRH) (AKT), 2012 WL

3597583, at *1 (E.D.N.Y. Jul. 12, 2012) *report and recommendation adopted*, 2012 WL 3597025 (E.D.N.Y. Aug. 20, 2012).

Here, the Clerk of the Court properly entered default because the Defaulting Defendants failed to formally answer in this case.  (Dkt. No. 51-2 (" Friedberg Aff.") ¶¶ 3-5.).   In light of the Defaulting Defendants' failure to formally respond to the Amended Complaint, default judgment is appropriate provided that Plaintiff establishes the Defaulting Defendants' liability for civil conspiracy to defraud and for RICO violations, as well as 31st Gas Corp.'s liability for conversion.

       1.    <u>Count Seven: Civil Conspiracy to Defraud</u>

Under New York law, civil conspiracy requires: "(1) the corrupt agreement between two or more persons, (2) an overt act, (3) their intentional participation in the furtherance of a plan or purpose, and (4) the resulting damage." *Pope v. Rice*, No. 04-cv-4171 (DLC), 2005 WL 613085, at *13 (S.D.N.Y. Mar. 14, 2005) (citing *Kashi v. Gratsos*, 790 F.2d 1050, 1055 (2d Cir. 1986)). New York law recognizes civil conspiracy only where that claim is linked to an underlying cause of action.  *See World Wrestling Fed'n Entm't v. Bozell*, 142 F. Supp. 2d 514, 532 (S.D.N.Y. 2001); *Local 144, Hotel, Hosp. v. C.N.H. Mgt. Assocs.*, 741 F.Supp. 415, 421 (S.D.N.Y. 1990).

A civil conspiracy claim "is merely the string whereby the plaintiff seeks to tie together those who, acting in concert, may be held responsible in damages for any overt act or acts." *Sackman v. Liggett Grp., Inc.*, 965 F.Supp. 391, 394-95 (E.D.N.Y. 1997) (quoting *Rutkin v. Reinfeld*, 229 F.2d 248, 252 (2d Cir. 1956), *cert. denied*, 352 U.S. 844 (1956).  "Allegations of a civil conspiracy, therefore, are proper only for the purpose of establishing joint liability[.]" *Fierro v. Gallucci*, No. 06-cv-5189 (JFB) (WDW), 2008 WL 2039545, at *16 (E.D.N.Y. May

12, 2008) (quoting *John's Insulation, Inc. v. Siska Constr. Co.*, 774 F.Supp. 156, 162 (S.D.N.Y. 1991)).  For instance, a civil conspiracy may be predicated on an underlying fraud claim.  *See Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 482 (E.D.N.Y. 1998), *aff'd* 205 F.3d 1327 (2d Cir. 2000).

Here, Plaintiff avers that the Defaulting Defendants entered into a corrupt agreement with other defendants to borrow money from Plaintiff with no intention of repayment.  To further this corrupt agreement, certain defendants intentionally submitted borrowing requests to Plaintiff containing accounts that were ineligible under the Credit and Security Agreement, including the Defaulting Defendants' accounts.  Absent these misrepresentations, Plaintiff would not have extended the Loan or authorized the funds transfers that followed.  Finally, Plaintiff was harmed because it never recovered a significant portion of the outstanding balance.  In light of these allegations, Plaintiff can sustain an action for civil conspiracy, thereby establishing joint liability, if it also sufficiently pleads an underlying fraud or conversion claim.

To establish a fraud claim under New York law, a plaintiff must show the following: "(I) a misrepresentation or material omission of fact which was false and known to be false; (ii) made for the purpose of inducing the other party to rely on it; (iii) justifiable reliance of the other party; and (iv) injury."  *Bosch v. LaMattina*, No. 08-cv-0238 (AKT), 2012 WL 4739465, at *6 (E.D.N.Y. Sept. 28, 2012) (citing *Premium Mortg. Corp. v. Equifax, Inc.*, 585 F.3d 103, 108 (2d Cir. 2009)).

Plaintiff alleges that the Defaulting Defendants acted in concert with other defendants to commit fraud by knowingly, and continually, making false statements regarding the eligibility of certain accounts receivable in order to induce Plaintiff to make the Loan and to allow the

7

defendants to continue to draw from the loan.  Plaintiff reasonably relied on these false statements, as well as those in the monthly accounts receivable reports, in making the Loan and in periodically disbursing funds.  As a result of these false statements Plaintiff suffered economic damages in that it could not recover the bulk of the Loan balance.  Thus, when accepting Plaintiff's allegations as true, the Amended Complaint establishes the required elements for civil conspiracy to defraud Plaintiff.

At the damages hearing, Plaintiff also indicated that it would establish conversion as underlying conduct for civil conspiracy.  However, after a careful review of the Amended Complaint, the Court finds that there is no conversion count plead directly against the Defaulting Defendants.  Specifically, count seven is crafted with fraud as the underlying conduct for civil conspiracy.  Notwithstanding the allegations in the facts section of the Amended Complaint regarding the transfer of Collateral to Lax, Arje, Rishty, and Maira Rishty (Amended Compl. ¶¶ 64-67), Plaintiff never expressly pleads the elements of a conversion claim against the Defaulting Defendants. Practically, however, this has no effect on Plaintiff's recovery because, as discussed below, the Defaulting Defendants are liable for trebled RICO damages, and any conversion recovery would be subsumed by this larger award.

2.   Count Ten: RICO

RICO provides plaintiffs a private cause of action for injuries caused "by reason of" a defendant's racketeering activity.  18 U.S.C. §§ 1962, 1964(c).  A plaintiff pursuing a RICO claim must establish the following seven elements: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise'

(7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.*, 719 F. 2d 5, 17 (2d Cir. 1983), *cert. denied*, 465 U.S. 1025 (1984) (citing 18 U.S.C. § 1962(a)-(c)).

"For an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent common course of conduct and work together to achieve such purposes." *First Capital Asset Mgmt. v. Satinwood, Inc*., 385 F.3d 159, 174 (2d Cir. 2004); *see also* 18 U.S.C. § 1961(1)(B).[3]  A pattern "requires at least two acts of racketeering activity" within a ten-year period.  18 U.S.C. § 1961(5); *McLaughlin v. Am. Tobacco Co*., 522 F.3d 215, 220 (2d Cir. 2008).  The compensable "injury" is "the harm caused by predicate acts sufficiently related to constitute a pattern." *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985).

Here too, Plaintiff's allegations, when taken as true, establish that the Defaulting Defendants, acting in concert with other named defendants, constituted a RICO enterprise.   The Defaulting Defendants conspired with National Gasoline and other defendants to profit from Loan proceeds fraudulently drawn from Plaintiff.  This enterprise engaged in gasoline sales in New Jersey and New York, thereby affecting interstate commerce.  Further, the defendants transferred funds by wire, and engaged in other wire and mail communications, as part of their scheme to defraud Plaintiff.  These transfers, and other acts, were related to each other by virtue of common participants, common targets, and common purposes, primarily defrauding Plaintiff. Finally, Plaintiff was harmed by this enterprise in that it was deprived of its Collateral and the

---

[3] The essential elements of mail and wire fraud are "(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme." *United States v. Shellef*, 507 F.3d 82, 107 (2d Cir. 2007).

unpaid balance of the Loan.  Accordingly, Plaintiff has satisfied the elements of a RICO claim

for the purpose of a default judgment.

      3.      <u>Count Eleven: Conversion against 31st Gas Corp.</u>

"Under New York law, conversion is any unauthorized exercise of control by one who is

not the owner which interferes with a superior possessory right of another in property." *Goddard*

*v. Citibank*, No. 04-cv-5317 (NGG) (LB), 2006 WL 842925, at *8 (Mar. 27, 2006) (quoting

*Tese-Milner v. TPAC, LLC (In re Ticketplanet.com)*, 313 B.R. 46, 69 (Bankr. S.D.N.Y. 2004));

*accord Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006).  When money

is the subject of a conversion claim, the funds must be "specifically identifiable." *Id.* (citing

*Federation Internationale Du Sport Universitaire v. Greater Buffalo Athletic Corp.*, No.

93–cv–0635E(F), 1994 WL 411908, at *4 (W.D.N.Y. Aug. 4, 1994)).

  Plaintiff possessed a perfected security interest in nearly all of defendant National

Gasoline's assets, including accounts receivable and other Collateral under the Credit and

Security Agreement.  This Collateral was to be deposited in the Collection Account and only

Plaintiff was authorized to withdraw funds from this account.  However, after Plaintiff notified

defendant National Gasoline of its default, Lax and/or Rishty transferred funds from the

Collection Account to 31st Gas Corp.  Plaintiff did not authorize this transfer of its property.

Finally, the funds transferred to 31st Gas Corp. were sufficiently identified in the Amended

Complaint.  Thus, again accepting Plaintiff's allegations as true for the purpose of default

judgment, the allegations in the Amended Complaint support a claim for conversion against 31st

Gas Corp.[4]

---

    [4] 31st Gas Corp. is one of the Defaulting Defendants.

10

## II.     Consenting Defendants' Liability

By entering into a consent judgment, the parties agree to "all of the relief to be provided by the judgment and all of the wording to effectuate that relief." *Pearson Educ., Inc. v. Bobadilla*, No. 08-cv-7413 (GBD) (KNF), 2009 WL 4405810, at *2 (S.D.N.Y. Nov. 29, 2009) *report and recommendation adopted*, 2011 WL 1045078 (S.D.N.Y. Mar. 17,2011) (quoting *Janus Films, Inc. v. Miller*, 801 F.2d 578, 582 (2d Cir. 1986)); *see also Interspace Inc. v. Morris*, 650 F.Supp. 107, 109 (S.D.N.Y. 1986) ("A consent judgment is a contract to end a lawsuit in which the relief to be provided by the judgment and the wording to effectuate that relief are agreed to by the parties.").

"It is presumed that parties enter into a consent judgment only after careful negotiation has produced agreement on its terms." *Audiovisual Publishers, Inc. v. Cenco Inc.*, 964 F.Supp. 861, 875 (S.D.N.Y. 1997) (citing *U.S. v. Armour & Co.*, 402 U.S. 673, 681–82 (1971)). However, court approval is required where the resolution of a case involves a consent judgment. *See S.E.C. v. Cioffi*,  868 F.Supp.2d 65, 66 (E.D.N.Y. 2012); *see also Barcia v. Sitkin*, 367 F.3d 87, 90 (2d Cir. 2004) ("[A] consent decree (or consent judgment) is an agreement of the parties entered upon the record with the sanction and approval of the court.").

The Court granted Plaintiff's motion to approve the consent judgment against the Consenting Defendants on November 3, 2011.   Specifically, the Consenting Defendants agreed to final judgment against them, jointly and severally, in favor of Plaintiff.  Accordingly, all

liability is admitted, and so the Court will turn to a review of the damages for civil conspiracy to defraud and for RICO violations.[5]

## III.   Damages

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c)[6].   Plaintiff's "recovery is limited to the amount requested in its demand for judgment."   *See Verizon Directories Corp. v. Ostad*, No. 05-cv-4887 (SLT) (KAM), 2008 WL 2783358, at *3 (Jul. 15, 2008) (citing Fed. R. Civ. P. 54(c); *Scala v. Moore McCormack Lines, Inc.,* 985 F.2d 680, 683 (2d Cir. 1993)).   "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."   *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158.   The plaintiff bears the burden of establishing damages at an evidentiary hearing.   *Id*.

In its Amended Complaint, Plaintiff seeks the following damages from the Consenting and Defaulting Defendants: (a) $4,455,815.00 for civil conspiracy to defraud; and (b)

---

[5] As with the Defaulting Defendants, the Court finds that count seven of the Amended Complaint is crafted with fraud as the underlying conduct.  As such, the Consenting Defendants have consented to final judgment for civil conspiracy and fraud, but not conversion.  Once more, this distinction has no practical effect on Plaintiff's recovery, as it is awarded treble damages for the RICO claim.

[6] The theory behind this rule "is that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action. It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award."  10 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2663 (3d ed.1998).

$14,967,358.83 for RICO violations.[7]  (Amended Compl. ¶¶ 130, 158.)  Plaintiff separately seeks $55,000 in damages against defendant 31st Gas Corp. for its conversion.  (Amended Compl. at ¶ 162).  At the damages hearing, Plaintiff proffered the following revised figures:  (a) $4,379,853.25 for its civil conspiracy fraud claim; (b) $5,753,359.90 for its civil conspiracy conversion claim; (c) $13,139,559.75 for its RICO claim; and (d) $646,472.37 in attorneys' fees, for a total judgement of $13,868,698.73, jointly and severally, against the Consenting and Defaulting Defendants.  (Hr'g Tr. at 86:2-7, 88:7-8.)

    1.   <u>Actual Damages</u>

RICO damages should be "'sufficient to place the plaintiff in the same financial position [it] would have occupied absent the illegal conduct.'" *Lukaszuk v. Sudeen*, No. 02-cv-5143 (JG) (NDG), 2007 WL 4699018, at *6 (E.D.N.Y. Nov. 27, 2007) (quoting *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1106 (2d Cir.1988)); *see also Aboeid v. Saudi Arabian Airlines, Inc.*, No. 10-cv-2518 (SJ) (VVP),  2011 WL 2470091, at *2 (E.D.N.Y. Jun. 17, 2011) ("Under New York law, plaintiffs may recover [common law fraud] damages only for their actual 'out-of-pocket' pecuniary losses.") (citing *Kregos v. Associated Press*, 3 F.3d 656, 665 (2d Cir. 1993)).

At the damages hearing, Plaintiff offered documents and testimony establishing the outstanding balance of the Loan as well as related interest charges and fees.  (Hr'g Tr. at 54:11-

---

[7] Although Plaintiff seeks recovery on multiple theories,  in its motions for default judgment and entry of final judgment as to damages against the Defaulting Defendants and Consenting Defendants respectively, Plaintiff requested that the court enter damages only as to count seven for $4,379,853.25.  (Dkt No. 66 at 4; Dkt. No. 67 at 4.)  However, Plaintiff sought damages for RICO and the separate conversion in the Amended Complaint and at the hearing. Thus, the defendants have notice of these damages in spite of the technically deficient pleadings.

62:5; Dkt. Nos. 82, 83.)  Plaintiff also submitted evidence of the amount of wire transfers from the Collection Account to various defendants, including to 31st Gas Corp.  (Hr'g Tr. at 47:12-23, 50:10-54:8; Dkt. No 76 at 11; Dkt. No. 81 at 2.)  This evidence establishes that Plaintiff is entitled to the following: (a) $4,379,853.25 in damages for the civil conspiracy fraud claim from the Consenting and Defaulting Defendants; (b) $4,379,853.25 for the RICO claim from the Consenting and Defaulting Defendants; (d) $55,000.00 for the conversion claim against 31st Gas Corp.

2.   Treble Damages

A plaintiff bringing a RICO action may sue to recover "threefold the damages he sustains." 18 U.S.C. § 1964(c).  Moreover, a treble damages award is "appropriate on default judgment."  *GEICO v. Infinity Health Prods., Ltd.,* No. 10-cv-5611 (JG) (JMA), 2012 WL 1427796, at *9 (E.D.N.Y. Apr. 6, 2012), *report and recommendation adopted*, 2012 WL 1432213 (E.D.N.Y. Apr 25, 2012).  At the hearing, Plaintiff provided sufficient evidence of an injury caused by a RICO violation totaling $4,379,853.25.  (Hr'g Tr. at 54:11-62:5; Dkt. Nos. 82, 83.)  Plaintiff has also established that the Consenting and Defaulting Defendants are liable under RICO. Thus, after trebling, the Consenting Defendants and the Defaulting Defendants are liable to Plaintiff for  $13,139,559.75.

3.   Interest

Because the RICO statute does not specifically provide for the award of pre-judgment interest, a district court has discretion to make such an award.  *See Gutman v. Klein*, No. 03-cv-1570 (BMC) (RML), 2010 WL 4975593, at *18 (E.D.N.Y. Aug. 19, 2010), *report and recommendation adopted*, 2010 WL 4916722 (E.D.N.Y. Nov 24, 2010) (citing *Abou–Khadra v.*

14

*Mahshie*, 4 F.3d 1071, 1084 (2d Cir. 1993)); *Wickham Contracting Co. v. Local Union No. 3*, 955 F.2d 831, 835 (2d Cir. 1992).  Typically, where treble damages are adequate to compensate plaintiffs, an award of pre-judgment interest is inappropriate.  *See e.g. Nu-Life Const. Corp. v. Bd. of Educ. of City of New York*, 789 F.Supp. 103, 105-06 (E.D.N.Y. 1992); *Bingham v. Zolt*, 810 F.Supp. 100 (S.D.N.Y. 1993).

Because Plaintiff is awarded treble damages amounting to a net recovery, the Court will not award pre-judgment interest on the RICO claim to avoid "an undeserved windfall unrelated to any 'business injuries' [Plaintiff] sustained." *Nu-Life Const. Corp.*, 789 F.Supp. at 106. Treble damages will fully and fairly compensate Plaintiff for its injury.[8]

However, Plaintiff is entitled to post-judgment interest from both the Consenting and Defaulting Defendants.  Pursuant to 28 U.S.C. § 1961, post-judgment interest is calculated from the date of entry of judgment at a rate equal to the weekly average one-year constant maturity Treasury yield, to be computed by the clerk of the court.

4.    Attorneys' Fees and Costs

Under New York law "attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule." *Mktg. Devs., Ltd. v. Genesis Imp. & Exp., Inc.*, No. 08-cv-3168 (CBA) (CLP) 2009 WL 4929419, at *11 (E.D.N.Y. Dec. 21, 2009) (quoting *Hooper Assocs., v.*

---

[8] Plaintiff is entitled to pre-judgment interest for its state law fraud claim.  *See* C.P.L.R. § 5001.  "Under New York law, awarding pre-judgment interest on damages awarded for fraud is mandatory." *In re Crazy Eddie Secs. Litig.*, 948 F.Supp. 1154, 1166 (E.D.N.Y. 1996).  The statutory rate for pre-judgment interest is nine percent per annum.  *See* C.P.L.R. § 5004. However, Plaintiff is already awarded treble damages, and any pre-judgment interest is subsumed by the RICO recovery.  Any determination of pre-judgment interest is an unnecessary academic exercise for the purpose of this default inquest.

15

*AGS Computers, Inc.*, 548 N.E.2d 903, 904 (1989)).  However, if a plaintiff can prove injury

caused by a RICO violation, he is entitled to recover reasonable attorneys' fees.  *See* 18 U.S.C. §

1964(c) ("Any person injured . . . by reason of a violation of section 1962 of this chapter may sue

therefor in any appropriate United States district court and shall recover . . . a reasonable

attorney's fee[.]"); *see also Gutman v. Klein*, No. 03-cv-1570 (BMC) (RML), 2010 WL 4916722,

at *6  (E.D.N.Y. Nov. 24, 2010).  Accordingly, Plaintiff may seek attorneys' fees and costs for

the RICO violation, but it may not seek attorneys' fees for the conversion or fraud claims, as

there is no basis for recovery under state law.[9]

As the moving party, the plaintiff bears the burden of "establishing entitlement to an

award and documenting the appropriate hours expended and hourly rates." *Savoie v. Merchs.*

*Bank*, 166 F.3d 456, 463 (2d Cir. 1990) (internal citation and quotation marks omitted).  The

plaintiff must provide contemporaneous time records that should "specify, for each attorney, the

date, the hours expended, and the nature of the work done."  *Thomas v. United States*, 02-cv-

5746 (HBP), 2011 WL 6057898, at *6 (S.D.N.Y. Dec. 5, 2011) (quoting *New York State Ass'n*

*for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)).

Plaintiff seeks an award of fees for each of the three firms that have represented them in

this case: (a) $682,352.04 for Leitess Friedberg PC ("LFPC"); (b) $193,534.91 for Strassberg &

Strassberg, P.C. ("Strassberg"); and (c) $2,093.84 for Benowich Law, LLP ("Benowich").  As an

initial matter, it is not appropriate to award Benowich attorneys' fees in this case, because its

---

[9] It also bears mentioning that neither the Consenting Defendants nor the Defaulting
Defendants executed or agreed to be bound by the Credit and Security Agreement, and so
Plaintiff is not entitled to recover fees from these defendants in connection with the "Costs and
Expenses" provision.

attorneys only performed legal work for *Wells Fargo Bank, N.A. v. HSBC Bank, N.A.*, No. 10-cv-

5140 (RRM) (ALC) (the "HSBC Action").  (Dkt. No. 66-2 ("Friedberg Fee Aff.") at 153.)  Thus,

the Court will only address the reasonableness of fees for work performed by LFPC and

Strassberg.

a.   Reasonable Hourly Rates

The Second Circuit has instructed district courts to evaluate the reasonableness of an

attorney's fee award under the "presumptively reasonable fee" standard, which is equal to a

reasonable hourly rate multiplied by a reasonable number of hours expended.  *See Arbor Hill*

*Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany,* 522 F.3d 182, 190 (2d Cir. 2008).

The reasonable hourly rate is "the rate a paying client would be willing to pay," bearing in mind

"that a reasonable, paying client wishes to spend the minimum necessary to litigate the case

effectively."  *Id.*  District courts have considerable discretion in determining the reasonable rate,

but should "bear in mind *all* of the case-specific variables that . . . have [been] identified as

relevant to the reasonableness of attorneys' fees," including the level of skill required to perform

the legal service properly, the attorney's customary hourly rate, the amount involved in the case,

and the experience, reputation, and ability of the attorneys.  *Id.* at 186 n.3, 190 (internal citations

omitted).

The general range of rates received by attorneys in this district spans from $200 to $400

for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to

$80 for legal assistants.  *See, e.g.*, *Bd. of Trs. of the Ins. v. Liberty Signs, Inc.,* 10-cv-1737 (ADS)

(AKT), 2011 WL 4374519, at *5 (E.D.N.Y. Aug. 30, 2011) (collecting cases); *Vazquez v.*

*Ranieri Cheese Corp.*, 07-cv-0464 (ENV) (VVP), 2011 WL 554695, at * 2 (E.D.N.Y. Feb. 7,

17

2011) (citing *Luca v. Cnty. of Nassau,* 698 F.Supp. 2d 296, 305-06 (E.D.N.Y. 2010)); *see also*

*Santiago v. Coco Nail HB, Inc.,* 10-cv-3373 (ILG) (MDG), 2012 WL 1117961, at *3 (E.D.N.Y.

Mar. 16, 2011) (collecting cases) (finding the prevailing hourly rates for partners in this district

between $300 and $400).

      For LFPC's services, Plaintiff seeks hourly rates for attorneys with more than twenty-

years experience ranging from $355 to $395; for attorneys with more than ten-years experience

ranging from $250 to 275; for attorneys with four-years experience ranging from $185 to 195;

and for non-attorney support staff ranging from $135 to $140.  (Dkt. No. 123 ("Friedberg Decl.")

¶ 10.)  While the Court finds the rates charged for attorneys reasonable, it must also reduce the

hourly rate for all non-attorney support staff to $75 in keeping with the general range of rates in

this district.

      For Strassberg's services, Plaintiff seeks an hourly rate of $375 for 4/2010-8/2010, $400

for 8/2010-6/2011, and $440 for 10/2011-11/2011. (Friedberg Fee Aff. at 124-45.)  The Court

finds it appropriate to reduce Strassberg's hourly rate for attorneys to $200 because Plaintiff

supplies no information to justify the reasonableness of those rates.  Specifically, Plaintiff has not

offered sufficient factual background about the experience or expertise of Strassberg's attorneys

to merit hourly rates at the high end of the range for partners in this district.  In the absence of

such information a reduction is appropriate. *See Garland v. Cohen & Krassner,* No. 08-cv-4626

(KAM) (RLM), 2011 WL 6010211, at *11 (E.D.N.Y. Nov. 29, 2011).

      Accordingly, I will award fees to LFPC at a rate of $355 to $395 per hour for Jeremy S.

Friedberg and Steven N. Leitess, who have each practiced law for twenty years or more, $250 to

$275 per hour for Gordon S. Young, who has practiced law for thirteen years, $185 to $195 per

hour for Joseph A. Pulver, who has practiced law for four years, and $75 per hour for non-lawyer assistants Dapo R. Lawal, Rosalee A. Johnson, and Shelley J. Baker.  In addition, I will award fees to Strassberg at a rate of $200 per hour for Robert Strassberg and Todd Strassberg.

   b. <u>Reduction of Hours</u>

  Plaintiff seeks fees for a total of 2,290.8 hours for work performed by LFPC and 103.1 hours for work performed by Strassberg.  When examining the hours billed, a court should determine reasonableness by considering "the value of the work product of the specific expenditures to the client's case." *Trs. of the Rd. Carriers Local 707 Welfare Fund v. Goldberg,* 08-cv-0884 (RRM) (MDG), 2009 WL 3497493, at *9 (E.D.N.Y. Oct. 28, 2009) (internal citations omitted).  The Court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994).   The Court should exclude "excessive, redundant or otherwise unnecessary hours" from the fee award.  *Quaratino v. Tiffany & Co.,* 166 F.3d 422, 425 (2d Cir. 1999) (internal citations omitted).  "In lieu of making minute adjustments to individual timekeeping entries, a court may make across-the-board percentage cuts in the number of hours claimed, 'as a practical means of trimming the fat from a fee application.'" *Heng Chan v. Sung Yue Tung Corp*., 03-cv-6048 (GEL), 2007 WL 1373118, at * 5 (S.D.N.Y. May 8, 2007) (quoting *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987)).

  After carefully reviewing the contemporaneous records that have been submitted, the Court is limiting the award of attorneys' fees to only the those hours spent litigating this action and not for the 999.8 hours spent on the HSBC Action or *Wells Fargo Bank N.A. v. DDK & Co.,*

*LLP*, No 11-cv-00008 (RRM) (RER) (the "DDK Action").  Plaintiff is entitled to the award of reasonable attorneys' fees under RICO, and the HSBC and DDK Actions are not part of Plaintiff's RICO claims.  Additionally, the Court will make an across-the-board ten percent reduction in the number of hours claimed to account for work performed on Plaintiff's non-RICO claims.  Accordingly, after taking into account the reduction of hours for all staff and the reduced hourly rate for LFPC's non-lawyer support staff,  I award $311,152.29 to LFPC in attorneys' fees.

Similarly, after reviewing Strassberg's monthly invoices consisting of contemporaneous records I must also reduce its hours by ten percent to eliminate hours worked on the non-RICO claims.  Thus, after taking into account the reduction of hours billed and the hourly rate for attorneys, I award $18,588.00 to Strassberg in attorneys' fees.

c.    Costs

LFPC seeks costs in the amount of $23,696.41 for this case, including $4,867.56 in private investigation, $1,320.00 in private process service, $515.04 in FedEx fees, $278.00 in filing fees, $1,095.00 in UCC filings and searches, $1,515.80 in photocopies, $2,121.88 in transcripts, and $1,128.60 for travel.  (Friedberg Decl. at 6.)  Strassberg seeks costs in the amount of $24,101.64 in costs spread throughout several invoices and riders.  (Friedberg Fee Aff. at 124-45.)  An award of attorney's fees should "include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."  *Cesario v. BNI Const., Inc.*, No. 07-cv-8545 (LLS) (GWG), 2008 WL 5210209, at *10 (S.D.N.Y. Dec. 15, 2008) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)).  Courts have found that expenses reasonably charged to a client might include express mail, long distance telephone,

20

local travel, messenger services, and copying.  *See King Vision Pay-Per-View Corp., Ltd. v. Tardes Calenas Moscoro, Inc.*, 01-cv-9775 (JGK) (JC), 2004 WL 473306, at * 5 (S.D.N.Y. Mar. 12, 2004); *Sulkowska v. City of New York*, 170 F. Supp. 2d 359, 370 (S.D.N.Y. 2001) (internal citation omitted).

I find the costs LFPC seeks to be appropriate and will award them.  However, Strassberg did not segregate its costs for the forty-nine state court actions from this case.  The only disbursement clearly expended on this case is the $350.00 district court filing fee.  Accordingly, I award Strassberg $350.00 in costs.

5.    Joint and Several Liability

"In a RICO conspiracy, defendants are jointly and severally liable for all of the plaintiff's damages, even those with which an individual defendant was not personally involved." *GEICO,* 2012 WL 1427796, at *9 (E.D.N.Y. Apr. 6, 2012).  However, even though each party is liable to the plaintiff for the damages, "double damages for the injury are not permitted."  *See Fleurentin v. McDowell*, No. 05-CV-4274 (ARR) (CLP), 2009 WL 2969686, at *14 (Sept. 16, 2009) (citing *Zapico v. Bucyrus Erie Co.*, 579 F.2d 714, 718 (2d Cir. 1978)).  Similarly, defendants are jointly and severally liable for damages in a civil conspiracy under New York law.  *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 240 (2d Cir. 1999) (citing  *Kashi v. Gratsos*, 790 F.2d 1050, 1054-55 (2d Cir. 1986)).

The Consenting and Defaulting Defendants are liable for RICO violations and civil conspiracy on consent and by default, respectively.  Accordingly, the Defaulting and Consenting Defendants are each jointly and severally liable to Plaintiff for the full amount of damages awarded.

21

## CONCLUSION

For the foregoing reasons, Plaintiff is awarded the following damages:

| Defendant(s) | Claim(s) | Damage(s) | Fees and Costs |
|---|---|---|---|
| Defaulting Defendants | Civil Conspiracy to Defraud;<br><br>RICO | $4,379,853.25 (jointly and severally)<br><br>$13,139,559.75 (jointly and severally) | None<br><br>$353,786.70 (jointly and severally) |
| Consenting Defendants | Civil Conspiracy to Defraud;<br><br>RICO | $4,379,853.25 (jointly and severally)<br><br>$13,139,559.75 (jointly and severally) | None<br><br>$353,786.70 (jointly and severally) |
| 31st Gas Corp. | Conversion | $55,000 | None |

Plaintiff is also entitled to post-judgment interest calculated from the date of entry of judgment.

The Clerk of the Court is directed to enter judgment separately against the Defaulting Defendants and the Consenting Defendants consistent with this Memorandum and Order.

**SO ORDERED.**

**Dated: January 16, 2013**
**Brooklyn, New York**

*Ramon E. Reyes, Jr.*

**Ramon E. Reyes, Jr.**
**United States Magistrate Judge**

22