16moralesUNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
WELLS FARGO BANK, N.A.,

                Plaintiff,

  -against-

NATIONAL GASOLINE, INC., CHAIM
LAX, DAVID RISHTY, 86 GAS CORP.,
BAISLEY GAS CORP., MELROSE GAS
CORP., 111TH STREET GAS CORP.,
NEPTUNE OIL CORP., 100
ROCKAWAY GAS CORP., COOPER
GAS CORP., 2061 GAS CORP., 8521
GAS CORP., FOREST GAS CORP.,
MAIRA RISHTY, SHLOMO ARJE a/k/a
MICHAEL ARJE, NATIONAL
GASOLINE WHOLESALE, LLC, 971
GAS CORP., SUN FUEL CORP., 2509
GAS CORP., IRVINGTON OIL CORP.,
FLATBUSH OIL CORP., LEAHS
EQUITIES, INC., WRIGHTSTOWN GAS
CORP., CATON GAS CORP., SUPERIOR
GAS CORP., 31ST GAS CORP., DOE,
INC. 1 through 10, and JOHN and/or JANE
DOES 1 through 10,

                Defendants.
-------------------------------------------------------X

**OPINION & ORDER**

10-CV-1762 (RER)

**RAMON E. REYES, JR., U.S.M.J.:**

      Wells Fargo Bank ("Plaintiff") commenced this action against National Gasoline, Inc.

("National Gasoline" or "National"), Chaim Lax ("Lax"), David Rishty ("Rishty"), 86 Gas Corp.,

Baisley Gas Corp., Melrose Gas Corp., 111th Street Gas Corp., Neptune Oil Corp., 100

Rockaway Gas Corp., Cooper Gas Corp., 2061 Gas Corp., 8521 Gas Corp., Forest Gas Corp.,

Doe, Inc. 1 through 10, and John and/or Jane Does 1 through 10 for common law fraud, breach

of contract, and conversion, and for related claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) & (d) on April 21, 2010.

On December 13, 2012, Plaintiff filed an amended complaint to add the following defendants: Maira Rishty, Shlomo Arje a/k/a Michael Arje ("Arje"), National Gasoline Wholesale, LLC ("National Wholesale"), 971 Gas Corp., Sun Fuel Corp., 2509 Gas Corp., Irvington Oil Corp., Flatbush Oil Corp., Leahs Equities, Inc., Wrightstown Gas Corp., Caton Gas Corp., Superior Gas, Inc., and 31st Gas Corp. In their answers National Gasoline and Rishty assert a breach of contract counterclaim and Rishty asserts a defamation and slander counterclaim.

Plaintiff moved for summary judgment on all of its claims, National Gasoline and Rishty's breach of contract counterclaim, and Rishty's defamation counterclaim. Since Plaintiff filed its motion for summary judgment, the parties have withdrawn several claims and counterclaims. Specifically, Rishty withdrew his defamation and slander counterclaim (Dkt. No. 102-7 at 20), and Plaintiff agreed to dismiss all other claims without prejudice in the event that the Court granted summary judgment on the breach of contract and conversion claims (Dkt. No. 106 at 1). For the following reasons, Plaintiff's motion is granted as to its breach of contract and conversion claims as well as Lax and National's counterclaim.

# BACKGROUND[1]

Plaintiff is a national banking association, with its main office in Sioux Falls, South Dakota. (Dkt. No. 35("Amended Compl.") ¶ 1.) Defendants are citizens of New York and New Jersey. (Amended Compl. ¶¶ 2-49, 52.)

Defendant National Gasoline is a wholesale gas distributor owned and operated by individual defendants Arje, Lax, and Rishty. (Pl.'s 56.1 Stmt. ¶¶ 40-41, 47, Exhs. 1, 29, 44, 71, 88; National's 56.1 Stmt. ¶¶ 40-41, 47.) National Gasoline and Lax aver that Rishty was only an officer of National. (National's 56.1 Stmt. ¶ 41.) Defendants Arje, Lax, Rishty, and Maira Rishty own or control 86 Gas Corp., Baisley Gas Corp., Melrose Gas Corp., 111th Street Gas Corp., Neptune Oil Corp., 100 Rockaway Gas Corp., Cooper Gas Corp., 2061 Gas Corp., 8521 Gas Corp., Forest Gas Corp., National Wholesale, 971 Gas Corp., Sun Fuel Corp., 2509 Gas Corp., Irivington Oil Corp., Flatbush Oil Corp., Leahs Equities, Inc., Wrightstown Gas Corp., Caton Gas Corp., and Superior Gas, Inc. (the "Affiliated Entities"). (Pl.'s 56.1 Stmt. ¶¶ 40-41, 47, 56, 69.) National Gasoline and Lax dispute certain of these affiliate allegations, but they do not deny that at least one of these individual defendants owned or controlled each of the Affiliated Entities. (National's 56.1 Stmt. ¶¶ 40-41, 47, 56, 69.)

On August 27, 2009, Plaintiff and National Gasoline entered into a credit and security agreement ("Credit Agreement"), note, and other related agreements, thereby establishing a $6.5

---

[1] The Court draws the facts in this section largely from the parties' statements of material facts submitted pursuant to Local Rule 56.1. Although the parties assign various titles to their submissions, for ease of reference I refer to them as Pl.'s 56.1 Stmt. (Dkt. No. 102-3), National's 56.1 Stmt. (Dkt. No. 102-6), Rishty's 56.1 Stmt. (Dkt. No. 102-7), and Pl.'s 56.1 Reply Stmt. (Dkt. No. 102-9). Unless otherwise noted, all facts in this section are deemed undisputed for the purpose of this summary judgment motion.

million revolving line of credit (the "Loan"). (Pl.'s 56.1 Stmt. ¶¶ 1, 11, Exhs. 1, 4, 7; National's 56.1 Stmt. ¶ 1.)[2] Lax signed the Credit Agreement on behalf of National Gasoline. (Pl.'s 56.1 Stmt. ¶¶ 2, 12, Exhs. 1, 5, 7; National's 56.1 Stmt. ¶ 2.)[3] Lax also executed a personal guaranty (the "Guaranty") on August 29, 2009, promising to pay Plaintiff any of National Gasoline's outstanding Loan obligations. (Pl.'s 56.1 Stmt. ¶ 16, Exh. 9 ("Guaranty"); National's 56.1 Stmt. ¶ 16.)

To secure the Loan, National Gasoline assigned Plaintiff a lien and continuing security interest in certain "Collateral," which included all of National's current and after-acquired inventory, its accounts receivable, and in a "Collection Account" National held with HSBC Bank USA, N.A. (Pl.'s 56.1 Stmt. ¶¶ 4-7, Exhs. 1, 4, 6; National's 56.1 Stmt. ¶¶ 4-7.) Defendants contend that the parties never established a valid "Collection Account." (National's 56.1 Stmt. ¶ 7.) Plaintiff perfected its security interest under the New Jersey Uniform Commercial Code by filing a UCC-1 financing statement against National Gasoline with the New Jersey Secretary of State. (Pl.'s 56.1 Stmt. ¶ 15, Exh. 4.)[4]

The Credit Agreement required that once received, all of National's accounts receivable be held in a non-commingled trust for Plaintiff until they were deposited in the Collection Account. (Pl.'s 56.1 Stmt. ¶¶ 7-8, Exh. 1 ("Credit Agreement") § 1.6(b); National's 56.1 Stmt.

---

[2] National and Lax deny the existence of a note between National and Plaintiff, but do not cite to any evidence in the record to substantiate their denial. (National's 56.1 Stmt. ¶ 11.)

[3] National and Lax admit that Lax signed the Credit Agreement on behalf of National Gasoline, but deny that Lax signed the note on behalf of National Gasoline. (National's 56.1 Stmt. ¶ 12.) National and Lax offer no evidence in support of their denial.

[4] National and Lax dispute that Plaintiff perfected its security interest, but they again fail to offer any evidence in support of their denial. (National's 56.1 Stmt. ¶ 15.)

¶¶ 7-8.) Under the Credit Agreement, National was to deposit any monies received from its customers into the Collection Account, or was to direct its customers to make payment into a "Lockbox" from which Plaintiff would then deposit those amounts into the Collection Account. (Pl.'s 56.1 Stmt. ¶ 8, Credit Agreement § 1.6(b); National's 56.1 Stmt. ¶ 8.) Failure to comply with these requirements was an event of default under the Credit Agreement. (Credit Agreement § 6.1(c).)

National Gasoline proceeded to collect accounts receivable and deposit these funds in both the Collection Account and a second HSBC account. (Pl.'s 56.1 Stmt. ¶ 105, Exhs. 6, 18; National's 56.1 Stmt. ¶ 105.) National Gasoline then transferred a portion of those accounts receivable from the second HSBC account to the Collection Account. (Pl.'s 56.1 Stmt. ¶ 106, Exh. 18; National's 56.1 Stmt. ¶ 106.) Starting in August 2009, Lax and/or Rishty transferred funds from the Collection Account back into the second HSBC account. (Pl.'s 56.1 Stmt. ¶ 107, Exhs. 6, 18; National's 56.1 Stmt. ¶ 107.) They then transferred funds totaling $2,993,105.13 from the second HSBC account to other National Gasoline accounts, several of the Affiliated Entities' accounts, and other businesses' accounts. (Pl.'s 56.1 Stmt. ¶¶ 108-09, Exhs. 4, 6, 18, 86; National's 56.1 Stmt. ¶¶ 108-09.) Plaintiff was never repaid these transferred funds. (Pl.'s 56.1 Stmt. ¶ 117, Exh. 4 ¶ 56; National's 56.1 Stmt. ¶ 117.)

Plaintiff notified National Gasoline of its defaults by March 26, 2010 letter, and National Gasoline ceased paying Plaintiff in April 2010. (Pl.'s 56.1 Stmt. ¶¶ 29, 110, Exhs. 6, 21; National's 56.1 Stmt. ¶¶ 29, 110.) Lax and/or Rishty then transferred $13,624,574.77 from the Collection Account to other accounts belonging to National Gasoline, the Affiliated Entities, and several other entities. (Pl.'s 56.1 Stmt. ¶¶ 111-12, Exhs. 4, 18, 87; National's 56.1 Stmt. ¶¶ 111-

12.) On April 13, 2010, Plaintiff formally notified defendant National Gasoline of its default under the Credit Agreement (Pl.'s 56.1 Stmt. ¶ 30, Exh. 23; National's 56.1 Stmt. ¶ 30), and accelerated the amount due on April 19, 2010 (Pl.'s 56.1 Stmt. ¶ 31, Exh. 24; National's 56.1 Stmt. ¶ 31). National Gasoline and Lax both failed to make any payments on the outstanding Loan balance. (Pl.'s 56.1 Stmt. ¶¶ 122, 124; National's 56.1 Stmt. ¶¶ 122, 124.) Two days later Plaintiff filed the instant action. (Dkt. No. 1.)

## DISCUSSION

### I. Jurisdiction

The Court has diversity jurisdiction over this matter as there is complete diversity among the parties. *See* 28 U.S.C. § 1332; *First Tenn. Bank, N.A. v. Black*, No. 10-CV-4925 (FB), 2011 WL 7428818, at *1-2 (E.D.N.Y. Sept. 9, 2011) *adopted by*, No. 10-CV-4925 (FB) (SMG), 2012 WL 628616 (E.D.N.Y. Feb. 27, 2012). Thus, the Court retains jurisdiction over the common law conversion and breach of contract claims, notwithstanding Plaintiff's withdrawal of its federal RICO claim.

"Th[e] court, sitting in diversity, must apply the law of the forum state, here New York, on outcome determinative issues, including any choice-of-law rules." *First Tenn. Bank, N.A.*, 2011 WL 7428818, at *2 (citing *Bank of N.Y. v. Amoco Oil Co.*, 35 F.3d 643, 650 (2d Cir. 1994)). Pursuant to New York's choice-of-law rules, "the parties may stipulate that the law of a state bearing a reasonable relation to the transaction governs their rights and duties under the transaction." *Id.* (citing *Bank of N.Y.*, 35 F.3d at 650). Here, the Credit Agreement and the Guaranty provide that New York law governs. (Credit Agreement § 7.15; Guaranty ¶ 15.) Since a majority of the Affiliated Entities are New York Corporations and a majority of the Defendants

conducted business in New York, the law of New York bears a reasonable relation to the transaction at issue. Accordingly, the Court will apply New York law to the breach of contract and conversion claims.

## II. **Summary Judgment**

The standard for summary judgment is well established. The party moving for summary judgment has the burden to demonstrate the following: (1) "there is no genuine dispute as to any material fact" and (2) "the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute as to a material fact is one that "might affect the outcome of the suit under the governing law" and that "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986).

In determining whether summary judgment is warranted, "[t]he Court 'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)). The nonmovant cannot create a genuine dispute of material fact by "rely[ing] on the allegations in his or her pleadings, conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Cushing v. Morning Pride Mfg., L.L.C.*, No. 05-CV-3612 (DRH), 2008 WL 283772, at *10 (E.D.N.Y. Jan. 30, 2008) (citation and internal quotation marks omitted).

Specifically, the nonmoving party cannot rest on "mere allegations or denials" but must instead "set forth specific facts showing there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see also Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). "Speculation,

conclusory allegations, and mere denials are not enough to raise genuine issues of fact." *Nat'l Westminster Bank USA v. Ross,* 676 F. Supp. 48, 51 (S.D.N.Y. 1987). Rather, each statement of material fact by the movant or opponent must be followed by a citation to evidence which would be admissible, as required by Federal Rule 56(e) and Local Civil Rule 56.1(d). Typically, one party's "'failure to respond or contest the facts set forth by the [movant] in [its] Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed.'" *Pooler v. Hempstead Police Dept.*, No. 10-CV-0482 (JFB) (ARL), 2012 WL 4060743, at *1, n.7 (E.D.N.Y. Sept. 14, 2012) (quoting *Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003) (internal citations omitted)).

Both National and Rishty's 56.1 statements of material facts contain conclusory denials of facts that are unsupported by any citation to admissible evidence. The Court will therefore deem such facts admitted. But where material facts are disputed, and such denials are supported by citations to evidence, the Court will address any disputes to the extent that they are material to Plaintiff's claims.

### III. <u>Conversion</u>

Plaintiff moves for summary judgment on its four conversion claims against Rishty, Lax, Arje, Maira Rishty, National Gasoline, and National Wholesale (the "Conversion Defendants"). Specifically, Plaintiff alleges the following in its Amended Complaint: (a) Rishty transferred, and refused to return, the proceeds of accounts receivable belonging to Plaintiff (Count Six); (b) Lax, Rishty, Maira Rishty, and Arje received, and failed to return, the proceeds of accounts receivable belonging to Plaintiff (Count Nine); (c) Lax collected the proceeds of accounts receivable belonging to Plaintiff and failed to return these funds (Count Twelve); and Lax, Arje, Rishty,

8

National Gasoline, and National Wholesale transferred, and refused to return, the proceeds of accounts receivable belonging to Plaintiff (Count Thirteen).  Although each of the conversion counts alleges conduct occurring at different times, involving different defendants, and transfers of different amounts, the analysis of each claim is identical because all claims relate to the Conversion Defendants' exercise of unauthorized control over the proceeds of accounts receivable belonging to Plaintiff.

To prove a conversion under New York law a plaintiff must show "(1) legal ownership or an immediate superior right of possession to a specific identifiable thing and (2) that the defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 267 (S.D.N.Y. 2011).  Moreover, where a conversion claim is for money, the funds in question must be specific and identifiable.  *Republic of Haiti v. Duvalier*, 211 A.D.2d 379, 384 (N.Y. 1995).

Additionally, it is well established in New York that a breach of contract claim may not be recast as a conversion claim. *See Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 204 (S.D.N.Y. 2011); *MBL Life Assur. Corp. v. 555 Realty Co.*, 240 A.D.2d 375, 376 (N.Y. App. Div. 1997).  In order to determine whether a conversion claim is simply a contract claim, courts look to whether the claims plead the same material facts. *Newman v. Mor*, 73 Fed. R. Serv. 3d 103, at 4 (E.D.N.Y. 2009).  Courts also consider whether the conversion claim is based on a wrong that is separately actionable. *Briarpatch Ltd. L.P. v. Geisler Roberdeau Inc.*, 148 F. Supp. 2d 321, 328-29 (S.D.N.Y. 2001).  Therefore, where a conversion claim is pled in the context of a contract, a plaintiff must prove not only the elements

of a conversion, but also an actionable wrong that is separate from the contract. *Citadel Mgmt., Inc. v. Telesis Trust, Inc.*, 123 F. Supp 2d 133, 148-49 (S.D.N.Y. 2000).

To prevail on its motion for summary judgment on the conversion claims, Plaintiff therefore must show that there is no material disagreement about the following: (a) there is an independent action beyond the contract; (b) it has a superior right of interest over the funds in question; (c) the Conversion Defendants exercised unlawful dominion over the funds; and (d) the funds are specific and identifiable.

As an initial matter, Plaintiff's conversion claims are independent of the Credit Agreement because the Conversion Defendants are not signatories to the contract. Whereas the Credit Agreement requires that National Gasoline hold all accounts receivable in trust for Plaintiff pending their transfer into a Collection Account, the Conversion Defendants are not bound to such an obligation. Thus, the undisputed fact that the Conversion Defendants, as non-signatories to the Credit Agreement unlawfully took control of the funds establishes actionable conduct beyond the contract. And although the Guaranty requires Defendant Lax to pay damages for any breach of the Credit Agreement, the behavior alleged against Lax does not fall under the contract insofar as the conversion claim alleges unlawful possession of funds, not a refusal to pay National Gasoline's outstanding Loan obligations.

Plaintiff also has a superior right of interest over the subject funds because the Credit Agreement required that all payments or proceeds of accounts receivable be held in trust for Plaintiff. Courts have treated trusts as being superior possessory interests for the purpose of conversion claims. *See Airlines Reporting Corp. v. Inter Transit Travel, Inc.*, 884 F. Supp. 83, 87 (E.D.N.Y. 1995); *Air Traffic Conference v. Downtown Travel Center, Inc.*, 383 N.Y.S.2d 805,

806 (Sup. Ct. 1976). Defendants argue that there is no superior interest in the property because no valid Collection Account was ever created. The Credit Agreement, however, required National Gasoline to hold funds from all accounts receivable in trust for Plainitff, separate and distinct from any obligation to establish a valid Collection Account. (Credit Agreement § 1.6(b).) Plaintiff premises its conversion claim on its interest vis-a-vis the trust; thus the validity of the Collection Account is immaterial.[5]

Additionally, the Conversion Defendants also exercised unlawful dominion over the funds. The converter need not take physical possession of the property to establish conversion, he or she must merely exercise unlawful dominion. *Ahles v. Aztec Enters., Inc.*, 502 N.Y.S.2d 821, 822 (App. Div. 1986). Instead of holding the proceeds of accounts receivable in trust for Plaintiff, as required under the Credit Agreement, Lax and Rishty instead diverted these funds into accounts owned by the Conversion Defendants or corporations under these defendants' control. The Conversion Defendants then refused to return these funds to Plaintiff.

Finally, the funds are specific and identifiable. *Republic of Haiti*, 211 A.D.2d at 384; *DDR Constr. Servs., Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 660 (S.D.N.Y. 2011) (citations omitted). Here, Plaintiff has identified specific funds which should have been held in trust for their benefit, but were instead diverted to the Conversion Defendants individually, or to their corporate interests. Accordingly, Plaintiff is granted summary judgment on its conversion claims against National Gasoline, National Wholesale, Lax, Rishty, Arje, and Maira Rishty.

---

[5] Defendants also argue that Judge Mauskopf ruled that there was no superior interest to these funds when she denied Plaintiff's motion for a temporary restraining order. However, they have submitted no evidence, other than Plaintiff's motion papers, to substantiate this claim.

## IV. Breach of Contract

Plaintiff also moves for summary judgment on its breach of contract claims against defendants National Gasoline and Lax, alleging the following: (a) National Gasoline breached the Credit Agreement (Count One) and (b) Lax breached the Guaranty (Count Six).

To establish a breach of contract under New York law, a plaintiff must show the following: "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *See Bosch v. LaMattina*, No. 08-CV-0238 (AKT), 2012 WL 4739465, at *13 (E.D.N.Y. Sept. 28, 2012) (citing *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004)); *see also Diesel Props S.R.L. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011). "To form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound." *Dayton Superior Corp. v. Marjam Supply Co., Inc.*, No. 07-CV-5215 (DRH) (WDW), 2011 WL 990300, at *7 (E.D.N.Y. Feb. 22, 2011) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 507 (2d Cir. 2009)). Finally, "failure to prove damages . . . is fatal to [a] plaintiff's breach of contract cause of action." *LNC Inv s., Inc. v. First Fidelity Bank, N.A. N.J.*, 173 F.3d 454, 465 (2d Cir. 1999) (quoting *Cramer v. Spada*, 610 N.Y.S.2d 662, 664 (App. Div. 1994)).

"The construction of an unambiguous contract is appropriate for resolution on summary judgment." *MTA Bus Non–Union Emps. Rank & File Comm. ex rel. Simone v. Metro. Transp. Auth.*, No. 11-CV-4493 (JSR), 2012 WL 4782736, at *6 (S.D.N.Y. Sept. 25, 2012); *see also In re Miller's Launch, Inc.*, 773 F. Supp. 2d 294, 296 (E.D.N.Y. 2011). In New York, "the initial interpretation of a contract is a matter of law for the court to decide." *TIG Ins. Co. v. Martin*, No.

00-CV-5766 (DRH) (ETB), 2003 WL 25796732, at * 2 (E.D.N.Y. Feb. 28, 2003) (quoting *K. Bell & Assocs., Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996)); *see also Shaftel v. Dadras*, 39 F. Supp. 2d 217, 225 (E.D.N.Y. 1999) (finding summary judgment is appropriate where the contract conveys a "definite and precise meaning absent any ambiguity"); *Kreuter v. Reuter*, No. 01-CV-5229 (NGG), 2002 WL 31946715, at *7 (E.D.N.Y. Dec. 2, 2002). Summary judgment is "perfectly appropriate" in a contract dispute where the parties' "intent can readily be determined." *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 73 (2d Cir. 1989). "Thus, to grant summary judgment on a breach of contract claim, the Court must determine the following: (1) there are no genuine issues of material fact that a party engaged or failed to engage in certain conduct, and (2) such acts or omissions unambiguously breach the terms of the contract." *Kobrand Corp. v. Abadia Retuerta S.A.*, No. 12-CV-154 (KBF), 2012 WL 5851139, at *4-5 (S.D.N.Y. Nov. 19, 2012).

As an initial matter, Plaintiff must establish the existence of a contract through undisputed evidence. Here, there is no dispute that Plaintiff entered into a valid Credit Agreement with National Gasoline and Guaranty with Lax, and that Plaintiff's breach of contract claim arises directly from these agreements. Additionally, defendants do not argue that the language of the Credit Agreement is ambiguous. The undisputed facts also establish adequate consideration for the contract between National Gasoline and Plaintiff. National Gasoline received a revolving line of credit in exchange for its promise to remit payments to Plaintiff and to grant Plaintiff a security interest in certain collateral. Similarly, there was adequate consideration for the Guaranty in that Lax's business, National Gasoline, received the benefit of a

revolving line of credit in exchange for Lax's promise to pay all of National Gasoline's obligations.

The Court also finds no genuine issue of material fact with regard to Plaintiff's performance under the contract. Plaintiff fulfilled its contractual obligations by periodically advancing National Gasoline funds as set forth in the Credit Agreement. Although defendants argue that Plaintiff breached the Credit Agreement by withholding funds, this argument fails because Plaintiff suspended the line of credit only after National Gasoline defaulted. Under the Credit Agreement, Plaintiff was entitled to cease payments to National Gas in the event of a default. (Credit Agreement §§ 1.1(a), 4, 5.1, 6.1.) Thus, by the plain language of the Credit Agreement, Plaintiff was relieved of any contractual obligation to fund National Gasoline after this default.

Unlike Plaintiff, however, National Gasoline failed to perform under the contract when it failed to hold collateral in a non-commingled trust, as discussed above. This constituted an event of default under the Credit Agreement. (Credit Agreement § 6.1(b).) Plaintiff then exercised its contractual right to accelerate the amount due under the Credit Agreement six days after notifying National Gasoline of its default. National's failure to pay after the acceleration, in turn, triggered Lax's obligation to perform on his Guaranty. Lax failed to pay Plaintiff, however, thereby breaching the Guaranty.

Defendants also claim the contract was not breached because Plaintiff allowed the defendants to hold money in many accounts rather than the designated Collection Account. But even if the Court accepts that this course of dealing changed the requirement of the contract, *see*, *e.g.*, *Well Luck Co., Inc. v. F.C. Gerlach & Co., Inc.*, 421 F. Supp. 2d 533, 540 (E.D.N.Y. 2005),

this argument fails because it does not account for the Conversion Defendants' breach of the trust provisions of the Credit Agreement.

Lastly, Plaintiff was damaged because it was unable to recover the remaining balance of the Loan from either National Gasoline or Lax. To substantiate its damages, Plaintiff submitted an affidavit identifying National and Lax's outstanding obligations, with deductions for money and property recovered. (Pl.'s 56.1 Stmt., Exh. 4 ¶¶ 61-65.) In light of the above, Plaintiff is granted summary judgment on its breach of contract claims against National Gasoline and Lax because both defendants failed to perform under their respective contracts – the Credit Agreement and the Guaranty.

## V. **National Gasoline and Rishty's Breach of Contract Counterclaim**

Having found that Plaintiff is entitled to summary judgment on its breach of contract claim, the Court finds that National Gasoline and Rishty's breach of contract counterclaim must fail. Under the Credit Agreement, National Gasoline's failure to hold collateral in trust was an event of default. In the event of such default Plaintiff was afforded the discretion to cease all disbursements until the default was cured. Thus, Plaintiff's obligation to make payments was suspended the moment the default occurred. Additionally, the Court also finds that National Gasoline and Rishty's unsubstantiated allegation that Plaintiff never intended to honor the Credit Agreement and Loan is without merit. Accordingly, Plaintiff is granted summary judgment on the breach of contract counterclaim.

# CONCLUSION

For the foregoing reasons, Wells Fargo's motion for summary judgment is granted as to the following claims and counterclaims:

(1) the breach of contract claims against National Gasoline, Inc. (Count One) and Chaim Lax (Count Five);

(2) the conversion claims against David Rishty (Count Six), Chaim Lax, David Rishty, Maira Rishty, and Shlomo Arje (Count Nine), Chaim Lax (Count Twelve), and National Gasoline, Inc., National Gasoline Wholesale, LLC, Chaim Lax, David Rishty, and Shlomo Arje (Count Thirteen);

(3) National Gasoline, Inc. and David Rishty's breach of contract counterclaim.

Plaintiff's remaining claims are dismissed without prejudice. The allocation of liability among the defendants and the amount of damages for the conversion and breach of contract claims, if any, was determined at trial and will be addressed in a separate Findings of Fact and Conclusions of Law to be issued subsequently.

**SO ORDERED.**

**Dated: February 26, 2013**
**Brooklyn, New York**

*Ramon E. Reyes, Jr.*

**Ramon E. Reyes, Jr.**
**United States Magistrate Judge**